FILED
2019 Mar-01  PM 05:36
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

JANE DOE and JOHN DOE,          )
                                )
        Plaintiffs,             )
                                )
v.                              )          CASE NO. 5:18-cv-02101-CLS
                                )
STONERIDGE HOMES, INC.,         )
JAMES O. WRIGHT, an individual; )
and, AMERICAN SOUTHERN          )
HOMES, LLC,                     )
                                )
        Defendants.             )

## BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION TO COMPEL ARBITRATION

Defendants Stoneridge Homes, Inc., James O. Wright, and American Southern Homes, LLC[1] respectfully submit the following brief in support of their motion to compel arbitration:

## I.  Introduction

Stoneridge Homes is an Alabama Corporation that builds new homes in North Alabama. James Wright is the CEO of Stoneridge Homes. (Doc. 3, ¶ 6). As a homebuilder, Stoneridge Homes clearly engages in interstate commerce. American

---

[1] Defendants have filed a motion to dismiss contemporaneously with this filing. In the motion to dismiss, American Southern Homes argues, in part, that this Court lacks personal jurisdiction over it. Accordingly, American Southern Homes does not consent to this Court's personal jurisdiction over it in this case.

Southern Homes is a foreign limited liability company registered to do business in the Commonwealth of Virginia. (Doc. 3, ¶ 7).

In April 2016, plaintiffs expressed interest in building a house in phase 6 of the Midtowne on the Park development ("the development"). (Doc. 3, ¶ 11). At that time, phase six of the development was not yet under construction. (Id.). In March 2017, plaintiffs learned that construction was beginning on phase six and informed an agent for Stoneridge Homes that they were interested in building a house using the "Tammy" floor plan. (Id., ¶ 14). One of the plaintiffs suffered from a disability that affected her ability to walk without mobility aids. (Id. at ¶ 3). Over the next few months, plaintiffs worked with Stoneridge Homes to develop changes to the floor plan to accommodate the use of mobility aids. (Id., ¶ 14-15).

On June 11, 2017, plaintiffs and Stoneridge Homes entered into a Purchase Agreement for a home to be built in phase six of the development. (Doc. 3, ¶ 16, Doc. 3-1). The Purchase Agreement included the following arbitration provision:

> It is hereby agreed that **all claims, disputes and controversies** between Buyer and Seller arising from or related to the subject home, identified herein, or to any defect in or to the subject home or the real Property on which the subject home is situated, or the sale of the subject home by Seller, **including but not limited to** any claim for breach of contract, negligent or intentional misrepresentation, **excluding only** those claims by Seller against Buyer for Buyer's breach of this Agreement, shall be submitted to binding arbitration by and pursuant to the arbitration provision contained in the Limited Warranty Agreement, as of the

Effective Date (Federal Arbitration Act (9 U.S.C. §§ 1-6). **A copy of the Limited Warranty Agreement has been made available to Buyer, and is incorporated herein by reference, and made a part of this Agreement.**

(Doc. 3-1 at § 21) (emphasis added). The Limited Warranty Agreement provided, in part:

> Whereas Seller and Buyer on this same day entered into a Purchase and Agreement ("the Contract") of which this Limited Warranty Agreement (per the terms of the 2-10 Home Buyers Warranty or the 2-10 HBW) is a part, for the sale by Seller and the purchase by Buyer of a house ("Dwelling") located upon that certain parcel of real property located in Madison County, Alabama...

(Exhibit A to Motion to Compel Arbitration, Declaration of Kim Wright, ¶ 5, Exhibit 1, p. 1). The 2-10 Home Buyers Warranty Application, in turn, included the following language:

> Buyer(s) agree that any and all claims or disputes between him (them) and the Builder/Seller (including any person you contend is responsible for a defect in your home) arising from or relating to the Warranty, shall be submitted to binding arbitration pursuant to the Federal Arbitration Act (9 U.S.C. §§ 1-16). By signing below, Buyer acknowledges reading the 2-10 HBW Warranty Booklet, and **CONSENTS TO THE TERMS OF THAT DOCUMENT INCLUDING THE BINDING ARBITRATION PROVISION** contained therein.

(Id., ¶ 6, Exhibit 2). Finally, the 2-10 HBW Warranty Booklet included an arbitration provision which addresses, *inter alia*, the selection and authority of an arbitrator, the cost of arbitration, and the following provision for resolving disputes concerning the

application of the arbitration agreement:

> The Federal Arbitration Act (9 U.S.C. § 1 et seq., ("FAA") ) shall govern the meaning and enforceability of this arbitration agreement to the exclusion of any state law relating to the meaning or enforceability of arbitration clauses or agreements. **Any disputes concerning the interpretation or enforceability of this arbitration agreement**, including without limitation, its revocability or voidability for any cause, **the scope of arbitrable issues**, and any defense upon waiver, estoppel or laches, **shall be decided by the parties' appointed arbitrator**.

(Exhibit A to Motion to Compel Arbitration, Declaration of Kim Wright, ¶ 7, Exhibit 3, § 6(B)) (emphasis supplied).

The plaintiffs signed the Purchase Agreement and Kim Wright signed on behalf of Stoneridge Homes. (Doc. 3-1, p. 12). Copies of the Limited Warranty Agreement and the 2-10 HBW Booklet were made available to the plaintiffs on or before June 11, 2017. (Exhibit A to Motion to Compel Arbitration, Declaration of Kim Wright, ¶ 8). Neither James Wright nor American Southern Homes was a party to the Purchase Agreement. (Doc. 3-1). During construction, plaintiffs became dissatisfied with Stoneridge Homes' implementation of the requested modifications to the house. (Doc. 3, ¶¶ 18-19). After Stoneridge Homes made repeated attempts to resolve plaintiffs' concerns, plaintiffs filed an administrative complaint with the Department of Housing and Urban Development (HUD) against defendants on July 5, 2018 for housing discrimination on the basis of disability. (Id., ¶¶ 20-28). On September 27,

4

2018, Stoneridge Homes terminated the contract. (Doc. 3, ¶ 29).

Plaintiffs filed suit against defendants on December 21, 2018, alleging violations of the Fair Housing Amendments Act ("FHAA") (Count I) and the Alabama Deceptive Trade Practices Act (Count II) along with a breach of contract claim (Count III).  (Doc. 1). All three claims arise out of the construction and sale of the house described in the Purchase Agreement. (Id.). Count I was alleged against all defendants while Counts II and III were alleged against Stoneridge Homes and Wright. (Id.). Plaintiffs filed an amended complaint on January 7, 2019 reasserting all three counts. (Doc. 3). Based on the facts alleged in the plaintiffs' complaint and amended complaint, this case clearly falls within the scope of the arbitration provision contained in the Purchase Agreement.

## II.  Argument

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, establishes a strong federal policy in favor of arbitration. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006) (holding that the FAA "embodies the national policy favoring arbitration").[2] Under the FAA, arbitration agreements are "valid, irrevocable,

---

[2] The FAA applies to agreements "affecting commerce."  Citizens Bank v. Alafabco, 539 U.S. 52, 55 (2003); see also, e.g., LeFoy v. Merrill Lynch, Pierce, Fenner & Smith, No. CV-89-PTO-296-E, 1989 WL 80444, at * 1 (N.D. Ala. Apr. 14, 1989) (noting that "the slightest nexus of the agreement with interstate commerce will bring the agreement within the ambit of the FAA"). There is no question in this case that the Purchase Agreement "affects commerce." Thus, the FAA applies.

and enforceable, save upon such grounds as exist at law or equity for the revocation of the contract." 9 U.S.C. § 2. Congress' purpose in enacting the FAA was "to reverse the longstanding judicial hostility to arbitration agreements." <u>Gilmer v. Interstate/ Johnson Lane Corp.</u>, 500 U.S. 20, 24 (1991); see also <u>Caley v. Gulfstream Aerospace Corp.</u>, 428 F.3d 1359, 1367-68 (11th Cir. 2005) ("The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts."). In support of this policy favoring arbitration, the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court...for an order directing that such arbitration proceed in a manner provided for in such agreement." 9 U.S.C. § 4. When presented with a proper motion, courts must "rigorously enforce agreements to arbitrate." <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 221 (1985).

While state law governs the question of whether an agreement to arbitrate exists, federal law generally governs "the interpretation and enforcement of a valid arbitration agreement." <u>Eassa Props. v. Shearson Lehman Bros., Inc.</u>, 851 F.2d 1301, 1305 n. 7 (11th Cir. 1988); see also <u>Caley</u>, 428 F.3d at 1368 ("In determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts."). However, "the federal

policy favoring arbitration...is taken into consideration even in applying ordinary state law." <u>Caley</u>, 428 F.3d at 1368 (quoting <u>Cooper v. MRM Inv. Co.</u>, 367 F.3d 493, 498 (6th Cir. 2004) (quotation marks and citation omitted)).

When interpreting an arbitration agreement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983). "As with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 626 (1985). Just last month, a unanimous United States Supreme Court reiterated that the parties may even agree to have an arbitrator decide so-called gateway questions of arbitrability "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." <u>Schein, Inc. v. Archer & White Sales, Inc.</u>, ___ U.S. ___, 139 S.Ct. 524, 530 (Jan. 8, 2019) ("But if a valid arbitration agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.").

A.   **Claims Against Stoneridge Homes**

There is no question that a valid arbitration agreement exists and that the arbitration agreement covers the claims asserted against Stoneridge Homes. As the plaintiffs' admit in the amended complaint, they entered into a valid, binding contract

when they executed the Purchase Agreement on June 11, 2017. (Doc. 3, ¶¶ 16, 42-50). That Purchase Agreement included an arbitration provision and undoubtedly "affects commerce." Based on those facts alone, the arbitration provision is valid and enforceable under § 2 of the FAA. The only remaining question is whether the claims asserted fall within the scope of the arbitration provision.

In this case, the parties have agreed to make the issue of arbitrability subject to arbitration. As discussed above, the arbitration provision incorporates the Limited Warranty Agreement by reference. (Doc. 3-1 at § 21). The Limited Warranty Agreement incorporates the terms of the 2-10 Home Buyers Warranty and the 2-10 HBW Warranty Booklet. (Exhibit A to Motion to Compel Arbitration, Declaration of Kim Wright, Ex. 1 at p. 1, Ex. 2). The HBW Warranty Booklet provides:

> The Federal Arbitration Act (9 U.S.C. § 1 et seq., ("FAA") ) shall govern the meaning and enforceability of this arbitration agreement to the exclusion of any state law relating to the meaning or enforceability of arbitration clauses or agreements. **Any disputes concerning the interpretation or enforceability of this arbitration agreement**, including without limitation, its revocability or voidability for any cause, **the scope of arbitrable issues**, and any defense upon waiver, estoppel or laches, **shall be decided by the parties' appointed arbitrator**.

(Exhibit A to Motion to Compel Arbitration, Declaration of Kim Wright, Ex. 3 at § 6(B)) (emphasis added). Based on these provisions, the plaintiffs and Stoneridge Homes intended to delegate disputes concerning arbitrability to an arbitrator.

8

Accordingly, the arbitration provision is due to be enforced as to the plaintiffs' claims against Stoneridge Homes without any further analysis by this Court. See Schein, Inc., 139 S.Ct. at 528-29.

Of course, even setting aside for the moment the provisions of the HBW Warranty Booklet, the plaintiffs must still be compelled to arbitrate their claims against Stoneridge Homes based solely upon the plain language of the Purchase Agreement itself. The Purchase Agreement provides in relevant part as follows:

> It is hereby agreed that **all claims, disputes and controversies** between Buyer and Seller **arising from or related to the subject home**, identified herein, or to any defect in or to the subject home or the real Property on which the subject home is situated, **or the sale of the subject home by Seller, including but not limited to** any claim for breach of contract, negligent or intentional misrepresentation, **excluding only** those claims by Seller against Buyer for Buyer's breach of this Agreement, **shall be submitted to binding arbitration**[.]

(Doc. 3-1 at § 21) (emphasis added). By its plain language, the arbitration provision covers "all claims, disputes and controversies between Buyer and Seller" related to the "subject home," "any defect in or to the subject home" or "the sale of the subject home by the Seller." This clearly covers all three claims against Stoneridge Homes. The plaintiffs' FHAA claim arises out of the defendants' alleged failure to comply with the FHAA in their construction and sale of the "subject home." The fact that plaintiffs seek recovery under a federal statute does not change the analysis. See Caley, 428 F.3d at 1367. Similarly, the breach of contract and Deceptive Trade

9

Practices Act claims arise out of the defendants' actions and statements during the construction, negotiation for, and purchase of the "subject home." This conclusion is consistent with case law interpreting similar arbitration provisions. See, e.g., Triple I: Intern. Investments, Inc v. K2 Unlimited, Inc., 287 Fed. Appx. 63 (11th Cir. 2008) (arbitration provision applicable to "any legal dispute arising from" agreement included fraud claim); Gregory v. Electro-Mechanical Corp., 83 F.3d 382, 384 (11th Cir. 1996); Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109 (11th Cir. 2001); see also General Motors Corp. v. Stokes, 850 So. 2d 1239, 1243 (Ala. 2002) (arbitration provision applicable to claims "arising under or relating to" relocation agreement included fraud claim). Accordingly, the claims against Stoneridge Homes undoubtedly fall within the scope of the arbitration provision and should be arbitrated.

## B.   Claims Against Wright and American Southern Homes

Though not parties to the Purchase Agreement, Wright and American Southern Homes are entitled to enforce that agreement as well. State law governs whether a third party may enforce an arbitration agreement. Hanover Ins. Co. v. Atlantis Drywall & Framing LLC, 611 Fed. App'x. 585, 589 (11th Cir. 2015). Under Alabama law, an agent or employee of a party to an arbitration agreement is entitled to enforce that agreement to the same extent as his principal or employer. See Monsanto Co. v.

Benton Farm, 813 So. 2d 867, 874 (Ala. 2001). Indeed, an agent or employee "who has incurred liability for his principal by acting in the line and scope of his employment also 'stands in the shoes' of his principal with respect to the principal's rights in the transaction." Id. As discussed above, Wright is the CEO of Stoneridge Homes and therefore qualifies as an agent or employee of a party to the Purchase Agreement. (Doc. 3, ¶ 6). There is no dispute that Wright was acting in the line and scope of his employment or agency at all times relevant to this case. Indeed, Plaintiffs' claims against Wright expressly arise out of the Purchase Agreement between the plaintiffs and Stoneridge Homes. Accordingly, this Court should compel the plaintiffs to arbitrate their claims against Wright.

Likewise, American Southern Homes may compel the plaintiffs to arbitrate their claims against it based on the doctrine of "intertwining." The doctrine of "intertwining" applies "'where arbitrable and nonarbitrable claims are so closely related that the party to a controversy subject to arbitration is equitably estopped to deny the arbitrability of the related claim.'" Hanover Ins. Co., 611 Fed. App'x. at 590 (quoting Jenkins v. Atelier Homes, Inc., 62 So. 3d 504, 512 (Ala. 2010) (quoting Fountain v. Ingram, 926 So. 2d 333, 335 (Ala. 2005))). Key to the doctrine "is the requirement that 'the signatory to the arbitration agreement is or will be engaged in an arbitration proceeding with the plaintiff.'" Id. (quoting S. Energy Homes, Inc. V.

11

Kennedy, 774 So. 2d 540, 545 (Ala. 2000)).

In this case, the claim against American Southern Homes is inextricable from the claims against Stoneridge Homes and Wright. To support their FHAA claim against American Southern Homes, the plaintiffs rely on the same factual allegations they use to support their FHAA claims against Wright and Stoneridge Homes. (Doc. 3, ¶ 39). Because it is obvious that the claims against Stoneridge Homes are subject to the arbitration provision, the plaintiffs "will be engaged in an arbitration proceeding with [a signatory to the arbitration agreement]." Thus, the doctrine of intertwining will apply, and the plaintiffs should also be compelled to arbitrate their claim against American Southern Homes.

### III. Conclusion

For the reasons stated above, defendants' motion to compel arbitration is due to be granted on all claims asserted in this case.

s/ David J. Canupp
David J. Canupp

s/ J. Bradley Emmons
J. Bradley Emmons

LANIER FORD SHAVER & PAYNE, P.C.
P. O. Box 2087
2101 West Clinton Avenue,  Suite 102 (35805)
Huntsville, AL 35804
Phone: 256-535-1100 / Fax: 256-533-9322

E-mail: djc@lfsp.com and jbe@lfsp.com

Attorneys for Defendants Stoneridge Homes, Inc.,
James O. Wright and American Southern Homes, LLC

## CERTIFICATE OF SERVICE

I certify that I have filed the foregoing with the Clerk of the Court using the ECF System, which will send notification of such filing to those parties of record who are registered for electronic filing, and further certify that those parties of record who are not registered for electronic filing have been served by mail by depositing a copy of the same in the United States mail, first class postage prepaid and properly addressed to them as follows:

> Edward I. Zwilling
> LAW OFFICE OF EDWARD I ZWILLING LLC
> 4000 Eagle Point Corporate Drive
> Birmingham, AL 35242
> Phone: 205-822-2701
> Email: edwardzwilling@zwillinglaw.com

on this the 1st day of March, 2019.

> s/ David J. Canupp
> David J. Canupp

14