# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JANE DOE and JOHN DOE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 5:18-cv-2101-CLS** |
| | ) | |
| **STONERIDGE HOMES, INC.,** | ) | |
| *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiffs who identify themselves by use of the pseudonyms "Jane and John Doe" filed this action on December 21, 2018,[1] and filed an amended complaint on January 7, 2019.[2] They named the following defendants: Stoneridge Homes, Inc. ("Stoneridge"); James O. Wright, the Chief Executive Officer of Stoneridge; and American Southern Homes, LLC, the entity that owns Stoneridge.[3] Plaintiffs assert a federal claim under the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.* (the "FHAA"), and supplemental state law claims for breach of contract and violation of the Alabama Deceptive Trade Practices Act. This opinion addresses defendants' motion to compel arbitration.[4]

---

[1] Doc. no. 1 (Complaint).

[2] Doc. no. 3 (Amended Complaint).

[3] *Id.* ¶¶ 5-7.

[4] Doc. no. 8. Defendants also filed a motion to dismiss pursuant to Federal Rules of Civil

# I. ALLEGATIONS OF PLAINTIFFS' AMENDED COMPLAINT

Plaintiff Jane Doe suffers from multiple medical conditions that impair her ability to see and walk without mobility aids, including a wheelchair.[5] She and her husband John Doe first became interested in contracting with Stoneridge to build a home in Phase 6 of the "Midtowne on the Park" subdivision located in Huntsville, Alabama, during late February or early March of 2016.[6] Phase 6 was not yet under construction, but the Does nonetheless chose a floor plan and began to modify it to accommodate Jane Doe's disabilities while they waited on Phase 6 to open.[7] When Phase 6 did open in March of 2017, plaintiffs immediately notified the real estate agent representing Stoneridge that they wanted to build a home, "and discussions regarding Plaintiffs' requested changes necessary for wheelchair accessibility immediately ensued."[8]

Plaintiffs paid a deposit on April 9, 2017, and began working with a draftsman to finalize their building plans.[9] They signed a Purchase Agreement with Stoneridge

---

Procedure 12(b)(2) and 12(b)(6) and a motion to require plaintiffs to proceed in their true identities. Doc. nos. 10 & 12. This court entered an order on March 4, 2019, stating that those motions would be held in abeyance pending a decision on defendants' motion to compel arbitration. Doc. no. 14.

[5] Doc. no. 3 (Amended Complaint), ¶ 3.

[6] *Id.* ¶ 9.

[7] *Id.* ¶¶ 11-13.

[8] *Id.* ¶ 14.

[9] *Id.* ¶ 15.

on June 11, 2017, contracting to build a home on a lot in Phase 6 of Midtowne on the Park, with specified modifications to accommodate Jane Doe's accessibility needs.[10] The modifications specified in the contract were not all implemented in the home, and defendants Stoneridge and Wright either did not correct the errors when they were identified, or they charged plaintiffs to make additional modifications.[11]

Stoneridge and Wright informed plaintiffs on April 19, 2018, that they would terminate the Purchase Agreement if plaintiffs did not agree to release defendants from liability for their negligent and discriminatory acts.[12] That was only eight days prior to the scheduled closing date of April 27, 2018, when the Does' mortgage rate was scheduled to lock in, and eleven days prior to the date on which the Does were scheduled to vacate their apartment.[13] An attorney for Stoneridge "gave the Does an ultimatum and a period of merely four (4) hours on April 20, 2018, in which to waive their civil rights to avoid the unilateral termination of their contract, which the Does refused to waive."[14] Stoneridge apparently did not terminate the contract on that date, however, because an attorney for American Southern Homes, LLC, contacted plaintiffs in June of 2018 to "insist[] that any resolution of the dispute concerning

---

[10] *Id.* ¶¶16-17.

[11] Doc. no. 3 (Amended Complaint), ¶¶ 18-21.

[12] *Id.* ¶ 23.

[13] *Id.* ¶ 24.

[14] *Id.* ¶ 25.

completion and sale of the subject dwelling would require Plaintiffs to waive and release any and all claims of disability discrimination."[15] Plaintiffs assert that defendants Stoneridge and Wright deceived the City of Huntsville by failing to provide the City with updated building plans, which caused the City to issue a certificate of occupancy for the home without being aware that certain accessibility features had been omitted.[16]

Plaintiffs filed a complaint against all defendants with the United States Department of Housing and Urban Development ("HUD") on July 5, 2018, and that complaint remains pending.[17] On September 27, 2018, after receiving notice of plaintiffs' HUD complaint, all defendants unilaterally terminated the Purchase Agreement, "alleging false pretenses, such as a failure of the Does to communicate with Defendants, and have been unsuccessfully attempting to return their contract payments since that date."[18] John Doe informed defendants' attorney by letter dated September 28, 2018, that the unilateral termination of the Purchase Agreement violated the face of the Agreement and was also a false and misleading trade practice

---

[15] *Id.* ¶ 26 (alteration supplied).

[16] *Id.* ¶ 27.

[17] Doc. no. 3 (Amended Complaint), ¶ 28.

[18] *Id.* ¶ 29. The Amended Complaint alleges that *all* defendants terminated the contract with plaintiffs, even though the only parties to the contract were plaintiff and Stoneridge.

under Alabama law.[19]  An attorney for American Southern Homes, LLC, informed the Does on November 8, 2018, that "the waiver of the ability to enforce their civil rights against Defendants was a condition precedent to allowing their subsidiary [*i.e.,* Stoneridge] to sell the home[,] and cut off further conciliation or settlement discussions."[20]

Plaintiffs claim that all defendants violated the FHAA by discriminating against Jane Doe because of her disability; "coercing, intimidating, threatening, or interfering with Plaintiffs in the exercise or enjoyment of" their FHAA rights; and retaliating against plaintiffs for filing a HUD complaint.[21]  They request injunctions to prevent future discrimination, and to require defendants to correct the construction errors and convey the home to plaintiffs.  They also request compensatory damages, punitive damages, and attorney fees.[22]  Plaintiffs also claim that Stoneridge and Wright breached the Purchase Agreement by failing to properly complete construction of the home and convey title to them.[23]  For that claim, they seek specific performance of the Purchase Agreement and compensatory, consequential, and

---

[19] *Id.* ¶ 30.

[20] *Id.* ¶ 31 (alterations supplied).

[21] *Id.* ¶ 39.

[22] *Id.* ¶ 41.

[23] Doc. no. 3 (Amended Complaint), ¶ 44.

incidental damages.[24]  Finally, plaintiffs claim that defendants Stoneridge and Wright

violated the Alabama Deceptive Trade Practices Act by unilaterally terminating the

Purchase Agreement under false and misleading pretenses in order to interfere with

plaintiffs' civil rights and avoid the expense of correcting the construction errors

identified by plaintiffs.[25]  For that claim, they seek damages, attorney fees, and

costs.[26]

## II. RELEVANT PROVISIONS OF THE PURCHASE AGREEMENT

The Purchase Agreement executed by plaintiff and Stoneridge on June 11,

2017, contains the following provision:

> **21.  <u>Arbitration</u>:**  It is hereby agreed that all claims, disputes
> and controversies between Buyer [*i.e.,* John and Jane Doe] and Seller
> [*i.e.,* Stoneridge] arising from or related to the subject home, identified
> herein, or to any defect in or to the subject home or the real Property on
> which the subject home is situated, or the sale of the subject home by
> Seller, including but not limited to any claim for breach of contract,
> negligent or intentional misrepresentation, excluding only those claims
> by Seller against Buyer for Buyer's breach of this Agreement, shall be
> submitted to binding arbitration by and pursuant to the arbitration
> provision contained in the Limited Warranty Agreement, as of the
> Effective Date[27] (Federal Arbitration Act (9 U.S.C. §§ 1-6)).  A copy of

---

[24] *Id.* ¶ 50.

[25] *Id.* ¶ 53. Ala. Code § 8-19-5 makes it illegal to "[e]ngag[e] in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." (alterations supplied).

[26] *Id.* ¶ 55.

[27] The "Effective Date" refers to the date on which the "Agreement becomes effective when executed by all parties, when Seller receives the Construction Commitment Fee paid by Buyer, and when the Plans, Specification/Selection Sheets have been signed by both Seller and Buyer."  Doc.

the Limited Warranty Agreement has been made available to Buyer, and
is incorporated herein by reference, and made a part of this Agreement.

Doc. no. 3-1 (Purchase Agreement), § 21 (alterations supplied).

The Purchase Agreement also states:

**4. Addendums, Exhibits and Documents Available on
Website:** Additional addendums may be executed by the parties hereto
from time to time. The additional addendums shall amend and become
a part of this Agreement, and all of the terms and provisions of such
addendums shall be incorporated herein by this reference upon
execution of such may include, but shall not be limited to the following:

- A. Plans
- B. Specification/Selection Sheets
- C. Sales Agreement Addendum(s)
- D. Change Order(s)
- E. Contract Summary/Addendum
- F. New Home Presentation Agreement
- G. Limited Warranty Agreement
- H. 2-10 Warranty Addendum

Buyer acknowledges that the following documents referenced in
this Agreement are available on Seller's website,
www.stoneridgehomesinc.com, or if Buyer desires, Seller shall make
available to Buyer hard copies of the following materials, of which
Buyer is assumed to have read and accepted prior to execution of this
Agreement:

- A. New Home Presentation Agreement
- B. 2-10 Warranty Sample Booklet
- C. Limited Warranty Agreement
- D. Residential Construction Performance Guidelines
- E. Declaration of Covenants, Conditions and Restrictions for
  the applicable community, together with any amendments.

no. 3-1 (Purchase Agreement), § 1.

> For purposes of this Agreement, where appropriate, the Limited Warranty Agreement, 2-10 Warranty and the Residential Construction Performance Guidelines shall be collectively referred to as the "Builder Guidelines." To the extent there are any contradictory provisions in the Limited Warranty Agreement, 2-10 Warranty and the Residential Standard Performance Guidelines, the contradictory language shall be resolved with preference given to the language in the Limited Warranty, then the 2-10 Warranty and finally the Residential Standard Performance Guidelines.

Doc. no. 3-1 (Purchase Agreement), § 4. One footnote omitted from the foregoing citations states that "[i]f any of the documents are not available on the website, Buyer acknowledges that same are available at the office of Seller."[28]

The record does not contain an executed copy of the Limited Warranty Agreement, 2-10 Warranty Addendum, or 2-10 Warranty Sample Booklet. Plaintiffs explained in their declarations that those documents would have been executed at closing, but closing has not yet occurred.[29]

The unexecuted copy of the Limited Warranty Agreement that is attached to defendants' motion to compel arbitration does not explicitly mention arbitration.[30] Instead, the introductory clause of the Limited Warranty Agreement states:

> WHEREAS, Seller and Buyer on this same day entered into a Purchase and Sale Agreement (the "Contract") *of which this Limited*

---

[28] Doc. no. 3-1 (Purchase Agreement), § 4 n.3 (alteration supplied).

[29] Doc. no. 15-1 (Declaration of John Doe), ¶ 9 ("Because we were not allowed to close on the house, the 'Limited Warranty Agreement' and '2-10 Home Buyers Warranty Application' were never executed."); doc. no. 15-2 (Declaration of Jane Doe), ¶ 9 (same).

[30] *See* doc. no. 8-1 (Limited Warranty Agreement).

> *Warranty Agreement (per the terms of the 2-10 Home Buyers Warranty or the 2-10 HBS) is a part*, for the sale by Seller and the purchase by Buyer of a house (the "Dwelling") located upon that certain parcel of real property located in _____ County, Alabama, the address of which is _____ . . . .

Doc. no. 8-1 (Limited Warranty Agreement), at ECF 5 (emphasis supplied). Plaintiffs and defendants all acknowledge that plaintiffs had access to the Limited Warranty Agreement prior to signing the Purchase Agreement on June 11, 2017, either through the Stoneridge website or otherwise.[31]

An unexecuted copy of the 2-10 Home Buyers Warranty Application also is attached to defendants' motion to compel arbitration. It states, in pertinent part:

> Buyer(s) agree that any and all claims or disputes between him (them) and the Builder/Seller (including any person you contend is responsible for a defect in your home) arising from or relating to the Warranty, shall be submitted to binding arbitration pursuant to the Federal Arbitration Act (9 U.S.C. §§ 1-16). By signing below, Buyer acknowledges reading the 2-10 HBW Warranty Booklet, and **CONSENTS TO THE TERMS OF THAT DOCUMENT INCLUDING THE BINDING ARBITRATION PROVISION** contained therein. Buyer(s) accepts the 2-10 HBW Warranty and in return, waives the Builder/Seller's implied warranty of habitability, merchantability or fitness to the extent allowed by law.

Doc. no. 8-1, at ECF 12 (2-10 Home Buyers Warranty Application) (emphasis in original). Plaintiffs testified that the 2-10 Home Buyers Warranty Application was

---

[31] Doc. no. 8-1 (Declaration of Kim Wright), ¶ 8 ("Copies of the Limited Warranty Agreement . . . were made available to the plaintiffs, on or before June 11, 2017."); doc. no. 15-1 (Declaration of John Doe), ¶ 7 (acknowledging that "the 'Limited Warranty Agreement'" was "available on Stoneridge Homes' website"); doc. no. 15-2 (Declaration of Jane Doe), ¶ 7 (same).

not made available to them on Stoneridge's website, or by any other means, before they signed the Purchase Agreement.[32]

A copy of the 2-10 Home Buyers Warranty Booklet also was attached to defendants' motion to compel arbitration. The section governing the Arbitration of Disputes states:

> To expedite the resolution of any and all claims, disputes and controversies involving You, the Builder/Seller, 2-10 HBW, and/or the Warranty Insurer arising out of or otherwise relating to this Warranty or the 2-10 HBW Program shall be settled by binding arbitration pursuant to this self-executing arbitration agreement. Agreeing to arbitration means You are waiving your right to a jury trial, class action or consolidation. Any party shall be entitled to recover reasonable attorney's fees and costs incurred in enforcing this arbitration agreement. The decision of the arbitrator shall be final and binding and will, if necessary, be entered as a judgment in any State or Federal court of competent jurisdiction.
>
> A.    SELECTING AN ARBITRATION SERVICE.
>
> The arbitration shall be conducted by DeMars & Associates, Ltd. ("DeMars") or Construction Dispute Resolution Services, LLC ("CDRS"). The choice of DeMars or CDRC [*sic*] shall be Yours, or if You are not involved, the party who initiates the arbitration. The arbitrating parties, by mutual agreement, may select an arbitration service other than DeMars or CDRC [*sic*].
>
> The arbitration shall be conducted in accordance with the arbitration rules in effect with the selected arbitration service. If the state where the Home or Multi-Family Building is located has a statute which mandates that arbitrators provide certain disclosures relating to

---

[32] Doc. no. 15-1 (Declaration of John Doe), ¶ 7; doc. no. 15-2 (Declaration of Jane Doe), ¶ 7.

their partiality and/or biases, the selected arbitrator shall be obliged to provide such disclosures and may be disqualified and replaced pursuant to the procedure set forth in the applicable state's statute relating to disqualifying potentially biased arbitrators. The disqualification of an arbitrator will not relieve any party bound by this arbitration agreement of the obligation to arbitrate all disputes. Following any disqualification of an arbitrator, the parties will arbitrate before a replacement arbitrator.

No arbitration arising out of or otherwise relating to this Warranty or the 2-10 HBW Program shall involve more than one Home or more than one Multi-Family Building. The arbitrator shall prepare a written arbitration award which sets forth his or her factual findings and the reasons on which his or her decision is based.

**B.  DISPUTES CONCERNING THE APPLICATION OF THIS ARBITRATION AGREEMENT.**

The Federal Arbitration Act (9 U.S.C. § 1 *et seq.*, ("FAA")) shall govern the meaning and enforceability of this arbitration agreement to the exclusion of any state law relating to the meaning or enforceability of arbitration clauses or agreements. Any disputes concerning the interpretation or enforceability of this arbitration agreement, including without limitation, its revocability or voidability for any cause, the scope of arbitrable issues, and any defense based upon waiver, estoppel or laches, shall be decided by the parties' appointed arbitrator.

**C.  COST OF ARBITRATION.**

All administrative fees of the arbitration service and fees of the arbitrator shall be equally allocated among the arbitrating parties, subject to the discretion of the arbitrator to reallocate such fees as warranted under the substantive law governing the parties' controversy.

**D.  AUTHORITY OF ARBITRATOR.**

The arbitrator shall not have the power to commit errors of law or legal reasoning. Thus, with regard to the tort, contract, statutory, or

equitable dispute arising out of or otherwise relating to this Warranty or the 2-10 HBW program, the arbitrator shall render an award in accordance with the substantive law governing the claims, disputes and/or controversies being prosecuted by the claimant. Specifically, the arbitrator is authorized to award all relief that would otherwise be available in a judicial forum to the claimant or respondent if the parties' controversy were litigated in court rather than in an arbitral proceeding.

Doc. no. 8-1, at ECF 24, § VI (boldface and capitalization in original). Plaintiffs and defendants all acknowledge that plaintiffs had access to the 2-10 Home Buyers Warranty Booklet prior to signing the Purchase Agreement on June 11, 2017, either through the Stoneridge website or otherwise.[33]

### III. DISCUSSION

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA" or "the Act"), establishes a national policy favoring arbitration of disputes. *See, e.g.*, *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987). Although there is a presumption of arbitrability under the Act, "'the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.'" *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014)). "The threshold question of whether an arbitration agreement exists at all is 'simply a matter of

---

[33] Doc. no. 8-1, at ECF 2 (Declaration of Kim Wright), ¶ 8 ("Copies of the . . . 2-10 HBW Booklet were made available to the plaintiffs, on or before June 11, 2017."); doc. no. 15-1 (Declaration of John Doe), ¶ 7 (acknowledging that "the '2-10 Warranty Sample Booklet'" was "available on Stoneridge Homes' website"); doc. no. 15-2 (Declaration of Jane Doe), ¶ 7 (same).

contract.'" *Bazemore*, 827 F.3d at 1329 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Where there is no agreement, the parties cannot be compelled to arbitrate. *Bazemore,* 827 F.3d at 1329; *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004).

Despite defendants' suggestion otherwise, the question of whether there is a valid arbitration agreement must be answered by this court, not by the arbitrator. It is true that the Supreme Court recently reaffirmed the enforceability of parties' agreements for an arbitrator to decide whether particular disputes are subject to arbitration under a *valid* arbitration agreement. *Henry Schein, Inc. v. Archer & White Sales, Inc*., – U.S. –, 139 S. Ct. 524, 529 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue."). Even so, the Court made it clear that any preliminary disputes about the validity of the arbitration agreement must be resolved by the court. *See id.* at 530 ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.") (citing 9 U.S.C. § 2).

Plaintiffs do not appear to dispute that, *if* the arbitration provision contained within the Purchase Agreement is valid, it would cover their claims, or that it would extend to the claims against James Wright and American Southern Homes, LLC, even

though the only signatories to the Purchase Agreement were plaintiffs and Stoneridge.[34]

Instead, plaintiffs focus their briefing upon the argument that "no valid and enforceable arbitration agreement yet exists between the parties."[35] The existence of a valid contract to arbitrate is determined by state law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

There are two prerequisites for a valid arbitration contract under Alabama law: "(1) there must be a written agreement calling for arbitration and (2) the contract in which the arbitration agreement appears must relate to a transaction involving

---

[34] Defendants argued in their motion to compel arbitration that James Wright and American Southern Homes, LLC, are entitled to enforce the arbitration agreement even though they did not sign it, because Wright, the CEO of Stoneridge, was acting as an agent of Stoneridge at all relevant times, and because the claims against American Southern Homes, LLC, are inextricably intertwined with the claims against Stoneridge. *See Jenkins v. Atelier Homes, Inc.*, 62 So. 3d 504, 512 (Ala. 2010) ("Arbitration may be compelled 'under the doctrine of "intertwining," where arbitrable and nonarbitrable claims are so closely related that the party to a controversy subject to arbitration is equitably estopped to deny the arbitrability of the related claim.'") (citing *Fountain v. Ingram*, 926 So.2d 333, 335 (Ala. 2005) ((in turn quoting *Conseco Financial Corp. v. Sharman*, 828 So.2d 890, 893-94 (Ala. 2001)); *Monsanto Co. v. Benton Farm*, 813 So. 2d 867, 874 (Ala. 2001) (holding that "an agent who has incurred liability for his principal by acting in the line and scope of his employment also 'stands in the shoes' of his principal with respect to the principal's rights in the transaction, including the right to enforce a valid arbitration agreement). Plaintiffs did not respond to either of those well-founded arguments in their response brief, and therefore abandoned their right to contest the arguments. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("The onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (citing *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir.1994) (in turn citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir.1986))).

[35] Doc. no. 15 (Plaintiff's Brief in Opposition to Defendants' Motion to Compel Arbitration), at 2.

interstate commerce." *Prudential Securities v. Micro-Fab, Inc.*, 689 So. 2d 829, 832 (Ala. 1997) (citing *Maxus, Inc. v. Sciacca*, 598 So. 2d 1376 (Ala. 1992)).  There has been no dispute, nor could there reasonably be, that the contract to construct plaintiffs' home related to a transaction involving interstate commerce.  Thus, the only remaining question is whether there was a valid written agreement to arbitrate.  Plaintiffs argue that the arbitration clause is invalid for three reasons:  (1) there was no mutual assent to its terms; (2) it violates their Seventh Amendment rights to a jury trial; and (3) it is unconscionable.

## A.    Mutual Assent

Mutual assent to the contract terms is an essential element of a valid contract. *Stacey v. Peed*, 142 So. 3d 529, 531 (Ala. 2013) (citing *Hargrove v. Tree of Life Christian Day Care Center*, 699 So. 2d 1242, 1247 (Ala. 1997)).  Plaintiffs do not dispute the intent of both parties to be bound by the Purchase Agreement generally; indeed, their entire case is based upon a breach of essential terms of that Agreement. Instead, they argue that mutual assent was lacking *only* with regard to the arbitration clause in § 21 of the Agreement.

Plaintiffs argue that the arbitration clause contains an ambiguity, because it incorporates the Limited Warranty Agreement:

> It is hereby agreed that all claims. . . shall be submitted to binding

> arbitration by and *pursuant to the arbitration provision contained in the Limited Warranty Agreement* . . . . A copy of the Limited Warranty Agreement has been made available to Buyer, and is incorporated herein by reference, and made a part of this Agreement.

Doc. no. 3-1 (Purchase Agreement), § 21 (emphasis and ellipses supplied). Because the Limited Warranty Agreement does not explicitly mention arbitration, plaintiffs assert that the arbitration clause makes a meaningless reference to a nonexistent provision. But the Limited Warranty Agreement incorporates the terms of the 2-10 Home Buyers Warranty, and the Warranty Booklet contains detailed provisions governing arbitration. Those other documents contain sufficient information to add meaning to the arbitration clause's reference to the Limited Warranty Agreement. Plaintiffs have cited no authority, and the court knows of none, to support the proposition that incorporation of other documents renders a contract ambiguous. Thus, there is no merit to plaintiffs' argument that "the agreement to arbitrate is . . . patently ambiguous by incorporation of nonexistent terms."[36]

Plaintiffs also argue that they did not assent to the arbitration because neither the Limited Warranty Agreement, nor or any document referencing the 2-10 Warranty, whether it be called an "Application," "Addendum," or "Booklet," was ever signed. It is true that § 4 of the Purchase Agreement states that various addenda

---

[36] *Id.* at 9 (ellipsis supplied).

shall be incorporated by reference into the Agreement *upon their execution*.[37]  But

that same section of the Purchase Agreement goes on to state that plaintiffs were

"assumed to have read *and accepted*" the Limited Warranty Agreement and 2-10

Warranty Sample Booklet prior to executing the Purchase Agreement.[38]  There is no

reason to read the first part of § 4 to nullify the second part, or to nullify the

arbitration clause simply because the Limited Warranty Agreement and 2-10

Warranty documents were not signed.  *See Regions Bank v. BP P.L.C.*, 200 So. 3d 1,

10 (Ala. 2016) (citing *Board of Water & Sewer Commissioners of City of Mobile v.

Bill Harbert Construction Co.*, 870 So. 2d 699, 710 (Ala. 2003)) ("[T]he law is settled

that this Court is bound to construe contracts so as to give meaning to all provisions

whenever possible.") (alteration supplied).

In any event, the arbitration clause in the Purchase Agreement does not need

the Limited Warranty Agreement or the 2-10 Home Buyers Warranty documents in

order to be enforceable.  Even standing alone, the arbitration clause reflects a clear

intent by both parties to submit all claims relating to plaintiffs' home, or any defects

in the home's construction, to binding arbitration.  The reference to the Limited

Warranty Agreement provides procedural detail about how the arbitration is to be

---

[37] Doc. no. 3-1 (Purchase Agreement), § 4.

[38] *Id.* (emphasis supplied).

conducted, but that detail is not necessary to the formation of a valid agreement to arbitrate. There is no indication that the specifics of the arbitration procedure (including the selection of the arbitration service, the form of the arbitration award, the costs of arbitration, and the extent of the arbitrator's authority) were essential to plaintiffs' decision to agree to arbitration. *See Stinson v. America's Home Place, Inc.*, 108 F. Supp. 2d 1278, 1284-85 (M.D. Ala. 2000) (quoting *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217, 1220 (11th Cir. 2000) (in turn quoting *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1364 (N.D. Ill.1990))) ("Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern' will the failure of the chosen forum preclude arbitration.") (citations and internal quotation marks omitted); *South Alabama Pigs, LLC v. Farmer Feeders, Inc.*, 305 F. Supp. 2d 1252, 1261-62 (M.D. Ala. 2004) (holding that an arbitration provision was enforceable even though it did not specify a manner for selecting arbitrators, state whether arbitration would be binding, or provide any details for how the arbitration should be conducted); *Robertson v. Mount Royal Towers*, 134 So. 3d 862, 868 (Ala. 2013) (rejecting the argument that "arbitration agreements are too vague to be enforced because they make only a general call for arbitration without providing any details regarding the selection of an arbitrator or arbitrators or the applicable rules of arbitration").

In summary, the arbitration clause clearly reflects the parties' intent to submit disputes to arbitration, and it cannot be invalidated for lack of mutual assent.

## B. Seventh Amendment Right to a Jury Trial

The Seventh Amendment provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. Plaintiffs argue that being compelled to arbitrate their claims against defendants violates their Seventh Amendment rights, and that there has been no valid waiver of those rights.[39] That argument is meritless because it well-settled that, "where a party enters into a valid agreement to arbitrate, the party is not entitled to a jury trial or to a judicial forum for covered disputes." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1372 (11th Cir. 2005).

## C. Unconscionability

Plaintiffs also argue that the arbitration clause is unenforceable because it is unconscionable.

---

[39] Plaintiffs also mention their right to a jury trial under the Alabama Constitution, but that right does not need to be separately addressed. "Alabama cases have held that the Seventh Amendment is not materially different from Article I, § 11 of the Alabama Constitution." *Eason v. Bynon*, 781 So. 2d 238, 241 (Ala. Civ. App. 2000) (citing *Poston v. Gaddis*, 335 So. 2d 165 (Ala. Civ. App.), *cert. denied*, 335 So. 2d 169 (Ala.1976)).

"Unconscionability is an affirmative defense, *Green Tree Fin. Corp. v. Wampler*, 749 So. 2d 409, 415 (Ala. 1999), and the party asserting the defense bears the burden of proof. *Ex parte Napier*, 723 So. 2d 49, 52-53 (Ala. 1998)." *Fleetwood Enters., Inc. v. Bruno*, 784 So. 2d 277, 281 (Ala. 2000). "To avoid an arbitration provision on the ground of unconscionability, the party objecting to arbitration must show both procedural and substantive unconscionability." *Blue Cross Blue Shield of Alabama v. Rigas*, 923 So. 2d 1077, 1087 (Ala. 2005) (emphasis added). In *Rigas*, this Court explained:

"Substantive unconscionability

"'"relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction."'

"*Ex parte Thicklin*, 824 So. 2d 723, 731 (Ala. 2002) (emphasis omitted) (quoting *Ex parte Foster*, 758 So. 2d 516, 520 n. 4 (Ala. 1999), quoting in turn 8 Richard A. Lord, *Williston on Contracts* § 18:10 (4th ed. 1998)). *See also Leeman v. Cook's Pest Control, Inc.*, 902 So. 2d 641 (Ala. 2004).

"Procedural unconscionability, on the other hand, 'deals with "procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction."' *Thicklin*, 824 So. 2d at 731 (quoting *Foster*, 758 So. 2d at 520 n. 4, quoting in turn 8 *Williston on Contracts* § 18:10)."

923 So. 2d at 1086-87.

*SCI Alabama Funeral Services, LLC v. Hinton*, 260 So. 3d 34, 38-39 (Ala. 2018).

Plaintiffs assert that the arbitration clause is procedurally unconscionable because they had no meaningful choice but to sign it.  The Alabama Supreme Court has held that

> "[a] primary indicium of unconscionability in the modern consumer-transaction context is whether the consumer has the ability 'to obtain the product made the basis of [the] action' without signing an arbitration clause." *American General Finance, Inc. v. Branch*, 793 So. 2d 738, 750 (Ala. 2000) (quoting *Green Tree Financial Corp. v. Wampler*, 749 So. 2d 409, 415 (Ala. 1999)).  In determining whether an arbitration agreement is procedurally unconscionable, we have looked at whether the consumer could obtain the product from the vendor or from another vendor without agreeing to an arbitration provision. *See, e.g., Leeman v. Cook's Pest Control*, 902 So. 2d 641, and *Branch*, 793 So. 2d at 750.

*Rigas*, 923 So. 2d at 1087 (alterations in original).

Plaintiffs have not presented any evidence that they would have been unable to build a home without signing an arbitration clause.  They testified that Stoneridge was the only builder constructing homes in the Midtowne on the Park subdivision, and "[t]he only other neighborhoods in the area were either outside of our price range (nearly twice the starting price of Midtowne's), or restricted to residents age 55 or greater."[40]  Plaintiffs did not specify their price range, define the "area" to which they

---

[40] Doc. no. 15-1 (Declaration of John Doe), ¶ 3; doc. no. 15-2 (Declaration of Jane Doe), ¶ 3 (alteration supplied).

confined their search, state how many builders they consulted before concluding that all other subdivisions were outside their price range, or state whether other builders were willing and able to accommodate their accessability needs. Importantly, plaintiffs also did not state whether other builders would have required an arbitration agreement. Thus, the best that can be said from the evidence in the record (which plaintiffs had the burden to provide) is that plaintiffs did not have the option to employ a builder *within their preferred subdivision* who would not require an arbitration agreement. It would strain the doctrine of procedural unconscionability too far to conclude that plaintiffs' preference left them with no meaningful choice about where to construct a home. *See Bess v. Check Express*, 294 F.3d 1298, 1308 (11th Cir. 2002) (plaintiff did not meet the burden of establishing unconscionability when his evidence did not reveal how many competitors in the geographic area required arbitration agreements); *Powell v. AT & T Mobility, LLC*, 742 F. Supp. 2d 1285, 1290 (N.D. Ala. 2010) ("The fact that ATTM's wireless telephone service contract, which included an arbitration provision, was the best contract available to Powell 'does not make the arbitration provision . . . unconscionable.'") (citations omitted, ellipsis in original); *Leeman*, 902 So. 2d at 646-47 (plaintiffs did not meet their burden of proving procedural unconscionability when they did not state the number of other potential service providers).

Plaintiffs also argue that the arbitration clause is substantively unconscionable because it preserves Stoneridge's right to pursue its claims in court while requiring plaintiffs to submit to arbitration. *See* doc. no. 3-1 (Purchase Agreement), § 21 (excluding from the arbitration requirement "those claims by Seller against Buyer for Buyer's breach of this Agreement").[41] Both the Eleventh Circuit and the Alabama Supreme Court have rejected that argument. *See Bess*, 294 F.3d at 1308 ("[L]ack of mutuality does not, in and of itself, render the arbitration agreement unconscionable.")) (alteration supplied); *Mason v. Acceptance Loan Co.*, 850 So. 2d 289, 301-02 (Ala. 2002) (same). Although plaintiffs would prefer a judicial forum, there is no indication that arbitration would deprive them of any rights and remedies to which they would be entitled in court. *See Mason*, 850 So. 2d at 302 ("[T]he effect of any lack of mutuality of remedy in this case is tempered by the absence of any limitations on what damages an arbitrator can assess against the defendants.") (alteration supplied).

## IV. CONCLUSION

Plaintiffs entered into a valid agreement to arbitrate their claims against defendants. Accordingly, defendants' motion to compel arbitration will be granted.

---

[41] Because both procedural and substantive unconscionability are required, *Rigas*, 923 So.2d at1087, the lack of procedural unconscionability could end the analysis. Even so, for the sake of completeness, the court will consider plaintiffs' arguments regarding substantive unconscionability.

An appropriate order will be entered contemporaneously herewith.

DONE this 16th day of April, 2019.

United States District Judge